3 23 0 1 3 7. The people of the state of Illinois, Appalachia by Adam Trejo versus Jordan Henry, appellant by Emily Brandon. Miss Brandon, you may proceed. Good afternoon, your honors, and may it please the court. My name is Emily Brandon, and I'm an assistant appellate defender with the state appellate defender's office representing Jordan Henry in this matter. Well, there are two issues raised in our brief. I'm going to be focusing my argument today on the first issue regarding will County being the improper venue in which to try crimes, which were committed entirely and cook County. However, before I get into my argument, I want to give a brief recitation of the facts. On February 23rd, 2022, Torrey Cossage was sitting in his car in the parking lot of the seven 11 in Chicago. When Jordan Henry approached him and ordered him out of his car, allegedly at gunpoint, Mr. immediately complied, walking to a nearby mattress store where he called the police. Mr. Henry thereafter left the 7 11 in his own car, but with Mr. Cossage his cell phone, which Cossage had left behind when he was ordered out of the car. About 30 minutes after the incident with Cossage and still in the city of Chicago, Mr. Henry approached driver Gollum Scott, who was parked and waiting for a customer. Henry ordered Mr. Scott out of the car again, allegedly at gunpoint and Mr. Scott complied. And Mr. Henry drove off with Mr. Scott's Volkswagen Jetta. About an hour after the incident with Mr. Scott, an Illinois state police trooper spotted the stolen Jetta traveling southbound on I-94 in Chicago. The police chased the Jetta through the Chicago area expressway system until the Jetta crashed along I-55 in Will County. Mr. Henry fled from the crash Jetta and was quickly apprehended. The cell phone that Mr. Henry took from Torrey Cossage was later found in the Jetta. And although it was alleged that Mr. Henry used a gun to force Cossage and Scott out of their cars, no gun was ever recovered. Mr. Henry was then tried and convicted in Will County. In regards to the incident against Mr. Cossage, Mr. Henry was convicted of attempted aggravated vascular hijacking, armed robbery regarding Mr. Cossage's cell phone and the theft of the cell phone. In regards to the incident against Mr. Scott, Mr. Henry was convicted of aggravated vascular hijacking and theft of Mr. Scott's car. In addition, Mr. Henry was convicted of unlawful possession of a weapon by a felon based on his alleged use of a firearm in the incident against Mr. Cossage and Mr. Scott. Now, to put my argument in the simplest of terms, Jordan Henry was tried for these offenses in the wrong county. The venue rules in Illinois are governed both by the Illinois Constitution and the venue statute, 720 ILCS 5-1-6. Generally speaking, criminal actions are required to be tried in the county where the offense was committed. But various provisions of the venue statute address crimes that the legislature has determined can be committed in more than one county. Subsection G covers the offense of theft and provides that for the purposes of prosecuting theft, venue is not to be offered in any county in which the accused exerted control over the stolen property. Here, the state argues and the trial court agrees that this provision automatically attaches to every crime for which theft is a lesser included offense, including, as relevant here, armed robbery and aggravated vascular hijacking. But this goes against both the plain language of the venue statute and Illinois Supreme Court precedents. First, subsection G refers only to the offense of theft. There is no language in that subsection that indicates the legislature intended for it to automatically apply to every offense for which theft is a lesser included. Indeed, in the Illinois Supreme Court's decision in People v. Gilliam, it makes clear that theft being a lesser included to robbery is irrelevant in determining whether the proper venue in which to prosecute a robbery lies in more than one county. The question is ultimately whether the robbery continued into more than one county. In Gilliam, the defendant committed an armed robbery in Chicago and locked the victim in the trunk of her car and then traveled with the victim in her trunk to another county where he was later prosecuted. The defendant argued that the county where he was prosecuted was not the proper venue because the robbery against the victim was completed in Cook County when he took control of the victim's car by force. The Illinois Supreme Court recognized that the robbery was technically completed in Chicago, but found that it continued into the second county because the force against the victim never ceased. Gilliam makes clear that... Now, did they say it was technically completed? Or... The Illinois Supreme Court, yes, did agree that the robbery was completed in the city of Chicago when he took... But the force is an element of robbery, isn't it? Yes, and he took control of the car by force in Chicago. But the offense was ongoing. That was the point that Justice Holdridge is making in Gilliam. Yes, the offense was ongoing because the force against the victim never ceased. It continued into the second county and that didn't happen. So would one conclude that the robbery was ongoing? Yes, it continued. I would agree with that. Yeah. Okay. So Supreme Court stated? No, I'm just... That language, they agreed that the robbery was technically completed in the city of Chicago when completed, but then continued, if that makes sense. It makes no sense. It makes no sense? But it isn't the case. It isn't the... Yes. That... So the two elements that comprise robbery, the taking and... Well, the element is the continued force. The continued force is what is important, right? And it's ongoing. Right. And here, that is not the case. The force against the victim ceased in the city of Chicago. Neither of the victims traveled with Mr. Henry into Will County. Therefore, the robbery did not continue into Will County as it did in Gilliam when the victim was stuffed in the trunk of her car. The force against the victim there continued on into the second county. That didn't happen here. After the, again, the use of force ended against both of the victims in the city of Chicago. After their respective encounters with Mr. Henry, they remained in Chicago where they spoke to Chicago police officers, again, about the crimes that happened to them in the city of Chicago. But he attempted theft in the theft of the second victim. What about that? What is the... If that hasn't ended? Against the... Yes. He attempted theft, right? But against the second, are you talking about the second carjacking? Yes. Yes. That ceased in the city of Chicago when he took the victim's car and drove off in it. The force against the victim ceased as soon as he took the car and drove off. The force against the victim did not continue into Will County. So, okay. Robbery, you're talking about robbery now. In the offensive vehicular hijacking. Robbery and vehicular hijacking are essentially the same offenses. Robbery includes the taking of property that is not a vehicle. And through the use of... Why would they distinguish vehicular hijacking from just generally robbery? I, that you wouldn't have to ask the legislature that question. Okay. They're treated the same. They are, they are, they are absolutely treated the same. And so again, the force used to take the victim's cell phone, to take the victim, the second victim's car, those, all of that ceased in the city of Chicago. None of that continued on into Will County. And again, because neither the armed robbery against Coppedge or the aggravated vehicular hijacking against Mr. Scott continued into Will County. Will County was not the proper venue in which to try Mr. Henry for these offenses. And the trial court erred in denying the motion to dismiss. The trial court also erred in denying the motion to dismiss with respect to the possession of a weapon by a felon charges and the attempt at aggravated vehicular hijacking charges. In regards to the unlawful possession of a weapon, the state presented no evidence that Mr. Henry ever possessed a gun in Will County. No gun was ever recovered from Mr. Henry's person and the vicinity where he was arrested, his belongings were from the Jetta. And there is absolutely no evidence that Mr. Henry, if he indeed had a gun during the incidents in Chicago, which we do contest, if he indeed had a gun, there's no evidence that he ever brought that gun into Will County.  I think we're going to say the same thing. The circumstantial argument, you're dismissing that completely. Well, first of all, none of that was presented at the hearing on the motion to dismiss where the state had the obligation to prove by preponderance of the evidence that the crime was committed in Will County. Second of all, the circumstantial evidence, no, the police chose not to look for a gun. If he has indeed dropped a gun, the police could have found it. Are we limited? We're not limited to the arguments at the motion to dismiss. We can also consider the evidence at trial.  I would argue that because we are challenging the motion, the trial court denial of the motion to dismiss based on improper. So you're saying we can't consider the testimony that he fiddled with his jacket. I would argue, no, because the state did not present that at the hearing where they had the burden to prove that the crime was committed in Will County. They didn't do that here. So this is not a rhetorical question. Are you saying that there's no case law suggesting that you're saying, is there any case law thing? We can't consider the facts of trial. Is it related to the venue question on appeal? First of all, then you doesn't have to be proven. I'm aware, but you preserved the issue. You raised it pre-trial. You had a trial, you raised it post-trial. Now you're in the appellate court. My question is, is there any case law about whether we can consider the facts of trial as just a priority to venue? You seem to be suggesting we're limited to the arguments made before trial, but I'm just not certain that's correct. I'm not aware of any case law, your honor. But again, the error here that we're alleging is that the state didn't prove their burden at the hearing on the motion to dismiss. Yeah. You're, you're actually circumcising there. You're circumscribing that issue. So you're saying anything subsequent at trial in terms of evidence, which there was. But I mean, there was, the state did not have to prove that the possession was in Will County at the trial. They only had to prove possession.  So that could have been the county evidence. Yes, that is also true. So, um, and again, also, I think it's important to note that there was an hour in between, uh, when Mr. Henry took Mr. Scott's car and when he was spotted by the police, giving him ample time to dispose of a gun, if he had one, the evidence, uh, even if you do consider, uh, the, the trial evidence, the evidence is that he was reaching towards his pocket. He could have been pulling up his pants. That is ambiguous at best. And then again, if the officer, one of the officers testified, um, I believe it was officer Whitback, um, testified that if he had seen a suspect dropping something that would have been investigated and it wasn't the officers here chose not to look for a weapon. And the state does not just get to say, well, maybe he had one. They have to prove it. So again, because there was no evidence that, um, Mr. Henry committed the offensive unlawful possession of a weapon by Ellen in Will County, the judge erred in denying the motion to dismiss with respect to this charge. Now the state concedes that Will County was the improper venue to try to attempt aggravated behavior, hijacking charge, because no element of that offense was committed in Will County. But the state argues that the denial of the motion to dismiss was harmless error. The error here is not harmless. And by that, I mean improper venue is not subject to harmless error analysis, which is reserved for trial errors. IE those occurred that during, during the presentation of the case to the jury, the trial court's denial of counsel's pretrial motion to dismiss for improper venue, wasn't an error that occurred during the presentation of the case to the jury. It was not a trial error. It was a pretrial error that affected the structure of Mr. Henry's trial. And it therefore came to structural error. The United States Supreme court and Weaver v. Massachusetts outlined various rationales that support finding an error is structural, including as relevant here, the right at issue isn't designed to protect the defendant from erroneous convictions, but instead protect some other interests. And two, the effects of the error are too hard to measure. First, a defendant's right to be prosecuted in the county where he committed the offense is designed in part to protect the defendant against prosecutorial quorum shopping. And it also serves to protect the defendants from the unfairness and hardship of being prosecuted in a remote place. So those are both areas that are different, um, from is that from that Massachusetts case you're citing? Weaver v. Massachusetts. Yes. Yes. Okay. Yes. Um, and then again, the effects of this error are too hard to measure. Um, it's really impossible to know what might have been if Mr. Henry had been tried in Cook County rather than Will County. Um, as one of the officers testified, when Mr. Henry was arrested, he told Mr. Henry, you're in Will County. It's going to be a totally different situation than Cook County. Um, and again, we really don't know the effects of this error. Um, just to know Cook County's racial demographics are markedly different from Will County. Cook County has nearly doubled by percentage on the amount of black meaning that a Cook County juror jury would have been more, um, would have been significantly more likely to contain people like Henry, uh, who are black and Cook County prosecutors also might've offered Mr. Henry a more generous plea deal than what Will County prosecutors were willing to offer, but again, even these are speculative, um, demonstrating that the precise effects of this error are difficult to ascertain. And the focus of it doesn't need to be just on the trial. You're saying negotiations can also be part of the structural error argument. Well, and that's just an example as to why the effects of this error of being tried in the wrong County are a little bit difficult to measure that we, it's just an example of a demonstrative example of that, that we don't know what Cook County prosecutors might have. We don't know how things would have played out differently if this case had been tried as it should have been in Cook County, but was other than. The fact that you're arguing it should have been tried in a different County, what was different about the trial? First of all, he chose to do a gun trial, which he may or may not, he may have done, um, knowing that, uh, a Will County juror or jury might've been more conservative, more, more white, more less likely to contain people that looked like him, he may have chosen to, um, to do a gun trial because of that. But again, these, these effects are difficult to ask, ascertain, and that's why this is more akin to structural error. And is it harmless? So it's structural error as to which offenses. As to the ones that were tried in the, um, in the wrong County. So that would be the, uh, let's see, that would be, yes, there are 13 offenses, there's a lot of offenses. So that would be the aggravated vehicular hijacking, um, against Mr. Scott, the attendant aggravated vehicular hijacking against Mr. Um, and then the armed robbery, the armed robbery charges, as well as the unlawful possession of a weapon by a felon. Oh my gosh. Oh, red light. Oh, okay. Okay. Well, you're on. Do you just want to make a summary? Yes. Um, and conclusions, the trial court erred in failing to dismiss, um, the offenses we just talked about. None of these crimes were committed or continued into Will County and Will County was not the proper venue. And we respectfully request that this court reversed Mr. Henry's conviction for those. Any further questions from the bench? Thank you. You got time and reply. Mr. Trey home. You may respond. May I please the court counsel on behalf of the people of the state of Illinois. Defendant will first like to address, uh, the state would first like to address defendants argument that it forfeited its response regarding council 11 council 11 charged, uh, the defendant with the unlawful possession of a weapon by a felon, um, in the, in the state's brief, it argued that the circumstantial evidence showed that he had a gun that he used to rob, uh, Goldman of his phone and also a tour of his phone and Goldman of his vehicle. Uh, although there was an hour time lapse, the circumstantial evidence showed that after police, uh, uh, tried to pull him over, he fled from Cook County to Will County, uh, police officers testified that they didn't see the defendant throughout anything out of the vehicle. And after he crashed the vehicle in Will County and fled that police officers testified that they saw him remove his jacket and reach towards his waistband defendant argues on appeal that the state forfeited that argument. But that's not true. Although the state didn't, uh, emphasize that argument and at the hearing, it did raise it in, uh, its response to defendants motion to dismiss, and the state would like to direct the appellate court to common law records 62 through 63, where the state does raise that argument. And again, you don't have to, um, there's a lot of counts contested. So the emphasis at the hearing was counts one through five, and that's what the state focuses argument on, but it just preserves that argument. The state will first, the state will now address the argument in regards to accounts one through five, which charged the defendant with various counts of aggravated vehicular hijacking and armed robbery. Uh, the crux of defendants argument really relies on people be gilliam to support, um, his contention that structural error occurred in this case. But the review of the case shows that it doesn't support his position, uh, his position as at all. As defend, as defended, uh, argued in, in the opening remarks, um, in that case, aggravated, uh, robbery was completed in Cook County. However, the essence of robbery continued into a different county, Jefferson, and the essence of robbery of the Gillian court stated with use of force or threat of force. Defendants interpretation of Gillian has, um, different interpretation, uh, folded into arguments, uh, suggests that in order for the essence of robbery to be continued, the victim has to be attached to the property and the victim was in Gillian, but that's not the case. Uh, that's not the whole thing. The essence of robbery must continue. And that's what happened here after, um, after the defendant, um, goal, the first victim, uh, cell phone and then stole, um, at Rob Goldman's vehicle, um, police officers proceeded to stop him, uh, in Cook County. And thereafter, the, uh, he used for, and that's definitely the threat of force to maintain that property. He continued, uh, lean Cook County into low County, putting the lives of other drivers at risk. How do you suggest that aggravated fleeing and looting is a use of force? Um, the manner, um, the, the, well, I'm focusing on the defendant's conduct. He used the vehicle in a reckless manner and that supports, uh, in a reckless manner to flee the police and to evade detection, that's for your, uh, I reached up to speeds of 150 miles per hour. Uh, that is the use of force to maintain that property. Um, so the essence of robbery can join the force is really directed towards the property. Exactly. It's not necessarily directed to the victim because these aren't crimes against the specific person. They're crimes against property. And so the analysis, uh, the, the analysis is focused on, uh, on the acts that the defendant did regarding the property, not necessarily. You're focusing on the continued possession of the property, not the speech, driving the, no, uh, the state focusing on his actions, which constitutes use of force to maintain that property. So if he was driving the speed limit in Will County, you would concede that you didn't have jurisdiction? No, uh, not necessarily because he was still depriving. Um, so, so it is the continued possession of the vehicle, uh, that in conjunction with the manner he operated. I want to change the hypothetical. He's driving the speed limit. He's located in Will County. He pulls over when the Mars lights are activated. Well, is he still committing the offense of aggravated vehicular hijacking in Will County? Yes, because he's continuing to maintain that property and he's not surrendering that property. So it's the continued possession of the property. Uh, that's not, uh, that's not, uh, that's not the state's position. I it's not, even though the form doesn't have to be extreme, you don't have to cause harm to you. Don't have to actually cause harm to another purpose. Just let me change. Let me ask you a question. If it was not, if the facts were nothing other than he's found in possession of the vehicle in Will County and it becomes clear that he was straight from court to will, when he was observed and stopped, would he be guilty of aggravated vehicular hijacking in Will County? Well, the issue is if he's guilty, again, at a motion, exactly. Because, um, yes, because, uh, the standard of review at a motion to dismiss regarding venues of the progress of the evidence, it's not beyond, beyond a reasonable doubt, but the state would like to emphasize that, um, the trial court relied on aggregate for its decision to, uh, deny, uh, uh, deny a defendant's motion to dismiss, uh, and the defendant on appeal attacks, uh, aggregate, although, uh, since 1997, there's been no case disagreeing with it. Um, the manner in which the defendant attacked aggregate on appeal, uh, they're arguing that the court in aggregate improperly used, uh, an analysis, uh, stems from, um, the following, uh, proposition that venue is proper, uh, in any County where, um, an element of the offense occurred. And Gilliam and Ackerman are very similar in that they apply the same analysis. Gilliam didn't exclusively state so, but they're focusing on whether one element was committed outside, uh, a different County, especially, it's essentially the same, uh, the same analysis. However, the difference is, um, which offense the court applied that analysis in, uh, in Gilliam, the court applied the analysis to the charged offense and Ackerman, uh, the court applied the analysis to a lesser included offense, um, and that's best. And because the defendant possessed, uh, possessed, um, the stolen item in that County venue was proper. And no court has disagreed, uh, disagreed with that analysis or reasoning pursuant to the doctrine of sorry, decisive Ackerman controls. It's still good law. Uh, that was a lesser included offensive, aggravated, particular hijacking and robbery, which the defendant doesn't contest. And as long as the defendant exerted control over that property in Will County venue was proper pursuant to, to Ackerman, uh, the state would like to move on, uh, because it does concede count six and seven, uh, that, um, then you wasn't proper regarding attempt, vehicular hijacking, uh, written in regards to the first victim, uh, Torrey, uh, uh, coach, uh, defendant argues that structural error, uh, is the appropriate analysis. And the state has agreed. A defendant doesn't cite any case standing for the proposition that, uh, error and not granting a motion to dismiss based on venue and structural error. The state actually, um, cites the case. People be homes, whether the reviewing courts apply to harmless error analysis in regards to the defendant arguing that, um, the venue was, uh, not, not dismissed. So harmless error does apply in this case. And the state sites, people be home for that proposition, which the court did apply it. Um, and the analysis regarding, uh, harmless error, the statements proved beyond a reasonable doubt that the jury verdict would have been the same as the error and the state positive that it is because the evidence, the evidence was overwhelming. He's not contesting on appeal identity. He's not contesting that he wasn't found in will County fleeing, um, after crashing the second victim's vehicle. Um, this is totally within the realm, the realm of harmless error. And it is absolutely, uh, harmless. Does the court have any other questions in your last statement that would then also apply to the circumstantial evidence that was used on the possession, uh, unlawful possession? Yes, absolutely. Uh, then you can be proven, uh, by circumstantial direct evidence and of course, structural error argument, because that was a much closer call. I think you can see that, um, in regards to which counts, the unlawful, um, possession of a weapon by a felon count up to count 11. I don't know. Okay. Yeah. Count 11. Yes. The circumstantial evidence would apply to that. Barring any further questions, the people of the state of Illinois respectfully request that this court affirmed defendants convictions. No. Thank you. Thank you. Absolutely. You may reply. Okay. So in regards, regards to counsel's argument that, um, the driving erratically constituted the continuation of force that just doesn't track with how robbery is conceived of. Robbery requires taking from the person or presence of another through the use of force and spread of force. That implies that the force has to continue against the victim. And again, that is what Gilliam makes clear is that the force has to continue against the victim. The court emphasis. And traveling with the victim locked in the trunk of her car. So again, the force continuing against the victim is what, um, allowed them to conclude that the robbery continued into Jefferson County. And that just is not the case here. The force against both victims ceased in the city of Chicago. Um, and did not continue at all into will County. Eggerman, how do you get around it? How do I get around it? Eggerman, um, the portion discussing the venue argument, um, it was wrong. That plain and simple. It was, it was wrongly decided. Um, they conflated and confused the venue rules and the rules for double jeopardy. Um, and it relied upon a premise that they, um, stated was generally speaking, it was a general premise that, um, venue is proper in any County in which any element of the offense is committed. But if you trace back, um, the case law that they cited for that proposition, it traces back to a case that sites, um, subsection M of the venue statute, which is, uh, applies only to inchoate offenses. And we, um, it's clear that this is not a general proposition, right? Because if it applies to all offenses, then there would be no reason for it to be specifically enumerated in the venue statute for inchoate offenses. It would automatically apply. So your position is if the woman was not in the trunk of the car, that decision would have come out differently. Correct. Correct. What about the theft being a lesser included? How is that? That's being a lesser included is irrelevant for the purposes of determining the proper venue. There's robbery for the robbery. The, again, the statute makes no mention of, um, the theft provision applying to any offense for which theft is a lesser included provision. There is a theft provision. Yes. We're not contesting that it is in the statute. We can't contest it. Um, but it does, again, that's being a lesser included, um, of armed robbery. They do a hijacking is irrelevant when it comes to determining the proper venue for those offenses. Um, for those again, here, those offenses were committed entirely in the city of Chicago. They began in Chicago. They ended in Chicago. They did not continue into will County and therefore will County was the improper venue in which to try. Can you address a recap for us? Your position on harmless there on harmless there? Yes. Um, this is not a trial error. It's one that affected the structure, um, the structure of the trial. It affected again, the judge that, um, Mr. Henry has seen in front of it affected what counseled he had. And, and this is more akin to structural error. Cause again, here, um, the error is the effects of this error are a little difficult to measure. As I stated, we don't know what could have been. We don't know for sure. The state says, oh, he would have been convicted in Cook County. We don't know that. That is pure speculation. We don't know what, um, Cook County prosecutors, what kind of plea deal he would have been, they would have been willing to offer, which could have affected what offenses he ultimately was convicted of and sentenced for. We don't know the effects. And that again, makes it more akin to structural error and not harmless error. And if your honors has any more questions, I'd be happy to answer, but if not, of course, there was one case that about the state smallwood and you address the analogy that they made between a sentencing enhancement using kind of the same. Um, I would, um, I argued, I would argue, and I argued in my reply that smallwood is actually not in a posit to our position here in both smallwood and in the fourth against the victim continue. And here it didn't. It's it's that simple. Our position is that simple. No further questions from the bench. Uh, thank you. Thank you. Thank you. Counsel both for your arguments in this matter this afternoon, it will be taken under advisement, this case and a written disposition shall issue in due course.